

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 2 2021

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CASEY D. COPELAND**                                    **PLAINTIFF**

**vs.**                      **CASE NO.** 4:21 - cv - 477 - DPM

**MARTY SULLIVAN, IN HIS OFFICIAL**                **DEFENDANTS**
**CAPACITY AS DIRECTOR, ARKANSAS**
**ADMINISTRATIVE OFFICE OF THE COURTS**
**AND STASIA BURK MCDONALD,**
**IN HER OFFICIAL CAPACITY AS DIRECTOR**
**OF THE ADMINISTRATIVE OFFICE**
**OF THE COURTS' DEPENDENCY-NEGLECT**
**ATTORNEY AD LITEM PROGRAM**

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF**

## I.    Introduction

"Whatever differences may exist about interpretations of the First

Amendment, there is practically universal agreement that a major purpose of that

Amendment was to protect the free discussion of governmental affairs." *Mills v.*

*Alabama,* 384 U.S. 214, 218 (1966).  Yet, despite this protection, the

Administrative Office of the Courts of the State of Arkansas terminated Casey D.

Copeland's contract for services as an Attorney Ad Litem roughly 48 hours *after* he

sent a private e-mail to his state legislator, Charlene Fite, chastising her for her

sponsorship and vote in favor of HB 1750, an act denying medical care to

transgender children.  Although Copeland spoke out on a matter of public concern

1

covered by both local and national press, Defendants decided to punish Copeland in violation of his protected right to engage in core political speech critical of his state legislator by terminating his contract with the State. As a result, Copeland requests that the Court protect his right to free speech by entering the preliminary injunction sought in his motion.

## II.    Facts

On March 30, 2021 at 2:41 P.M. Plaintiff Casey Copeland, a part-time contractor with the Administrative Office of the Courts ("AOC") Dependency-Neglect Attorney Ad Litem Program ("DNAALP") sent a private electronic message (e-mail) to Charlene Fite, his representative in the Arkansas House of Representatives. His e-mail, which utilized his private Gmail account and not the AOC e-mail system, was critical of Representative Fite's sponsorship of HB1750, which denied medical care to transgender children. Ex. 2 to Motion for Preliminary Injunction and Declaratory Relief.[1] Plaintiff sent the e-mail to no one else and told no one about it. [*Id.*; *see also* Decl., Exh. 21, ¶16.] HB1750 was (and continues to be) a matter of intense controversy and concern to citizens both statewide and nationally. [Decl., Exh. 21, ¶13.] Plaintiff's e-mail to Fite expressed his opinion as a citizen and constituent of Fite on this matter of public concern. [Email, dated Mar.

---

[1] Unless otherwise indicated, a citation to an Exhibit ("Exh.") refers to the indicated exhibit to Plaintiff's Motion for Preliminary Injunction and Declaratory Relief, filed herein.

30, 2021, Exh. 2.]  Defendant McDonald observed that Representative Fite was, in fact, Copeland's elected representative, stating "I think he only emailed here because Fite is his Rep." [Ex. 8.]

At 4:14 P.M., less than two hours after she had received Plaintiff's e-mail, Fite sent a copy of it to Brooke Steen, AOC Staff Attorney with the subject "email from Ad Litem," [Exh. 5] and at 4:16 P.M., Fite sent a copy to Defendant Sullivan with subject "E-mail received today from attorney ad litem." [Exh. 6.]  Representative Fite also sent a text with a screenshot of the e-mail to Janet Bledsoe, AAL Program Assistant Director, with the comment, "Should ad litem info be on e-mail of this nature?" [Exh 9.] At 4:20 P.M., Defendant Sullivan forwarded the e-mail to Sam Kauffman, AOC Human Resources Director, Defendant McDonald, and Jennifer Craun, Juvenile Justice Division Director, with the comment "This isn't helpful at all." [Exh. 3.]

And at 4:27 P.M., less than two hours after Copeland's initial e-mail message to Representative Fite, Defendant Sullivan e-mailed Defendant McDonald, Brooke Steen, Kristin J. Clark, AOC Senior Staff Attorney, Kauffman, and Craun with the query, "Sam, Should we terminate his contract?" [Exh. 7].  After discussion among Defendants Sullivan and McDonald and others [Exhs. 11, 5-10] on April 1, 2021, at 3:33 P.M. (roughly 48 hours after Plaintiff sent the "offending" e-mail to Representative Fite, his elected representative), Defendants decided to terminate

3

Copeland's contract. [Exh. 12]. Around 4:03 P.M. McDonald notified Plaintiff of the termination of his contract. [Exh. 4, 12.]

Since 2012, Plaintiff Copeland has had a yearly contract or been a full-time employee with the DNAALP. Every year since 2017 (when he became a contractor rather than an employee), this contract has been renewed. [Exh. 21, ¶¶6-7.] The term of his present contract runs from July 1, 2020 to June 30, 2021. [Exh. 1 to Compl.; Ex. 21, ¶¶5-7.] In December 2020, Plaintiff's contract with AOC was expanded to include appellate work. [Exh. 15; Ex.1 at p. 7-8.] This additional assignment of appellate duties was approved by Defendant McDonald. [Exh. 15.]

Plaintiff has never been notified by either Defendant nor any AOC administrator, nor is he aware, of any complaint or concern about his contractual performance or his ability to provide the contracted-for services. [Exh. 21, ¶¶9-11.] Despite asking for an explanation for the termination, he never received one. [Exh. 13; Exh. 21, ¶23.] However, a text from Jennifer Craun, dated April 1, 2021, at approximately 4:54 P.M. (after Plaintiff was notified of his termination) states, "…but could we go ahead and tell him his contract was terminated due to his use of his ad litem title and AOC web address in a political e-mail? That is what we will say if we face a lawsuit and I think it could help smooth relations with others because he is mischaracterizing the truth." [Exh. 14.]

In the DNAALP Policies and Procedures Manual, applicable to contract attorney *ad litems*, use of neither the"attorney ad litem title" nor the "AOC web address" is addressed, much less prohibited. [Exh. 20.] Moreover, on or about January 19, 2019, Plaintiff wrote a letter followed by an e-mail to Fite concerning legislation he suggested she might want to sponsor. [Exh. 17.] Fite forwarded this letter to Janet Bledsoe, the AOC's AAL Program Assistant Director, stating if she considered it a good idea, she could feel free to find a sponsor, but she declined to sponsor it herself. [Ex. 18.] Both the letter and follow-up e-mail contained the same information as the March 30, 2021 e-mail; however, no member of AOC staff ever suggested to Plaintiff that this was inappropriate, nor did Fite. [Exh. 17-19; Decl., Exh. 21, ¶24.]

Representative Fite and Plaintiff were personally acquainted prior to the March 30 e-mail. [*Id.* at ¶14.] In addition, he previously corresponded with her about other matters. [*Id; see also* Exh. 17-19.] These e-mails did not criticize her actions and so they generated no adverse reaction on her part. [*Id.*] In 2018, Plaintiff opposed Fite in the election to represent District 80 in the House of Representatives. [Decl., Exh. 21, ¶14.] During that election, Fite wrote Janet Bledsoe stating her polling showed that Plaintiff was "pulling votes from me" and asked Bledsoe to keep the communication secret, which Bledsoe agreed to do. [Exh. 16.]

### III.   <u>Arguments and Authorities</u>

Because Defendants' actions in terminating Plaintiff's contract violated Plaintiff's constitutional rights to free speech and due process under the First and Fourteenth Amendments of the United States Constitution, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff has filed a motion for preliminary injunction and declaratory relief which asks this Court to preliminarily enjoin Defendants from terminating Plaintiff's attorney *ad litem* 2020-2021 contract and to order Defendants to renew it for the year 2021-2022.

### SUMMARY OF ARGUMENT

As a government contractor Plaintiff has standing to bring this action. In order for him establish a prima facie case of unlawful retaliation for protected speech, he has the burden of proving: (1) engagement in an activity protected by the First Amendment; (2) an adverse employment action against him; and (3) the protected speech as a substantial or motivating factor in the decision to take the adverse employment action.  *Henry v. Johnson*, 950 F.3d 1005, 1011(8th Cir. 2020) (quoting *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009)). The evidence surrounding the termination of Plaintiff's contract shows that he can meet this burden. First, Plaintiff's private e-mail to Representative Fite about her sponsorship of a controversial bill was speech on a public issue. Second, Defendants prematurely terminated Plaintiff's AOC contract on April 1, 2021; and

6

third, the AOC's internal documents, produced in response to a Freedom of

Information Act request, show that Plaintiff's e-mail to Fite was the motivating

factor in his contract termination, and there was no legitimate reason to do so.

*Henry*, 950 F.3d at 1011.

Not only is there no legitimate reason for the termination, Defendants

identified no evidence that, in the less than 48 hours that transpired between

Plaintiff's e-mail to Fite and the decision to terminate him, there was any

disruption in AOC's operation, any workplace disharmony, impairment of working

relationships, or any alternation in Plaintiff's ability to provide his contracted,

professional services. *Henry*, 950 F.3d at 1011. Unless the defendants come

forward with evidence of disruption or some adverse impact arising from

Copeland's actions, this Court need not engage in the balancing test of *Pickering v.*

*Bd. of Educ. Township High School Dist.* 205, *Will County, Ill.,* 391 U.S. 563, 568

(1968). *Id.* (quoting *Belk v. City of Eldon* , 228 F.3d 872, 881 (8th Cir.

2000)("Where there is no evidence of disruption, resort to the *Pickering* factors is

unnecessary because there are no government interests in efficiency to weigh

against First Amendment interests."); *accord Mattingly v. Milligan,* No.

4:11CV00215 JLH, 2011 WL 5184283, *4 (E.D. Ark. Nov. 1, 2011) (noting that

absent evidence of disruption, the court need not proceed to balance the interests).

Because Plaintiff can prove that his contract termination was in retaliation

7

for his protected speech, Plaintiff contends he satisfies the criteria for obtaining a preliminary injunction. *Dataphase Sys. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

## A. Plaintiff Has Standing

The First Amendment protects not only employees but also independent contractors from termination or non-renewal of their at-will government contracts in retaliation for the exercise of their freedom of speech. The law makes no distinction in determining whether their First Amendment rights have been violated. *Board of County Comm. v. Umbehr,* 518 U.S. 668, 673 (1996); *see also Perry v. Sindermann*, 408 U.S. 593, 597-98 (1972) (citing *Shelton v. Tucker,* 364 U.S. 479, 485-86 (1960) and *Keyishian v. Board of Regents,* 385 U.S. 589, 605-06 (1967)). Plaintiff was a long-time contractor with the AOC and, since becoming a contractor in 2016, had always had his contract routinely renewed.  He had every expectation that not only would his 2020-2021 contract not be terminated, but that his contract would be renewed for 2021-2022 and for successive years, just as it had been previously.

To maintain an action in federal court, each Plaintiff must show: (1) he has "suffered an injury-in-fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  Plaintiff satisfies all three *Lujan* factors: (1) he has suffered injury-in-fact, *i.e..,* the termination and non-renewal of his contract; (2) the injury is traceable to the actions of Defendants, who decided to terminate Plaintiff's contract after their receipt of multiple communications from Representative Fite, and (3) a favorable decision by this Court will redress Plaintiff's injury.  As a result, Plaintiff plainly has standing to proceed.

### B. Plaintiff Has Satisfied the Requirements for a Preliminary Injunction

In determining whether Plaintiff is entitled to a preliminary injunction, the relevant factors are: "(1) the probability of success on the merits; (2) the threat of irreparable injury to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Dataphase Sys. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). However, "[w]hen a Plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Phelps–Roper v. Troutman,* 662 F.3d 485, 488 (8th Cir. 2011). "In a First Amendment case … the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008).  That is the case because the law

favors free expression. *See id.* As a result, establishing the factors focuses specifically on the likelihood of success on the merits.

### 1. Plaintiff is likely to succeed on the merits.

At this stage of the proceedings, the role of the Court is not to determine the constitutionality of Defendants' actions toward Plaintiff, but rather to determine the likelihood of Plaintiff's success in prevailing on his challenge. *See Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir.1991) (holding that in considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win). Plaintiff can prove each prong of the test of a government contractor First Amendment retaliation case. *Henry*, 950 F.3d at 1011 (quoting *Davenport,* 553 F.3d at 1113).

### (a) First Amendment Speech Is at Stake

"It is well established that a government employer must not take adverse employment actions against employees for exercising their First Amendment rights." *Shoskency v. Ramsey County*, 493 F. 3d 941 (8th Cir. 2007) (citing *Connick,* 461 U.S. at 142.) In determining whether First Amendment rights are at issue, the Court must first decide whether the public contractor was speaking on a matter of public concern, that is to say, as a public citizen, not in furtherance of private interests, or required by his or her official duties. *Garcetti v. Caballos*, 547 U.S. 410, 418, 421 (2006); *Nagel v. City of Jamestown,* 952 F.3d 923, 929 (8th Cir.

10

2020). Plaintiff's e-mail criticizing a piece of proposed, controversial legislation by his state legislator. which concerned the rights of transgender minors to obtain medical care, falls squarely within the definition of speech on a matter of public concern. Fite's bill was the subject of statewide and national debate and comment. Newspapers ran many stories on the issue at stake. [Exh. 21, ¶13.] "Matters of public concern include matters of social and other concern to the community." *Belk v. County of Eldon*, 228 F.23d. 872 (8th Cir. 2000.) As such, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers,* 461 U.S 138, 145 (1983) (quoting *NAACP v. Claiborne*, 102 S. Ct. 3409, 3426 (1982)); *accord Snyder v. Phelps,* 562 U.S. 443, 453 (2011) ("Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other con to the community, … or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."). The entire communication between Plaintiff and Fite concerned HB1571, the transgender medical treatment bill.  [Ex. 2] It contains not even a whiff of private interest, official duties, plaintiff's work situation, or anything to do with the AOC or DNAALP.  [*Id.*] Plaintiff sent the communication from his personal Gmail account. [*Id.*] Even Defendant McDonald acknowledged that the e-mail was of a political nature. [Exh. 8-10.] Clearly, Plaintiff was speaking as a citizen, not as any

11

representative of AOC. *Henry*, 950 F.3d at 1012; *Hemminghaus v. Missouri,* 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting *Garcetti v, Ceballos,* 547 U.S. 410, 418 (2006)).   Plaintiff's speech is thus protected by the First Amendment.

### (b)   Plaintiff Suffered an Adverse Employment Action

Since 2016, Plaintiff has had a yearly contract to provide attorney *ad litem* services to DNAALP, which was routinely renewed. [Exh. 21, ¶¶6-7.]   In December 2020, his contract duties were expanded to include appellate work. [Exh. 15, Ex. 1 to Compl., at p. 7-8.] His current contract was due to end June 30, 2021, and be renewed effective July 1, 2021 and be in effect till June 30, 2022. [*Id.*] Instead, following his e-mail to Fite, Defendants terminated Plaintiff's contract on April 1, 2021; thus ending his ability to represent existing clients and to represent future clients in dependency-neglect cases.   [Ex. 4.]   It also resulted and will result in a significant loss of his earnings. [Decl., Ex. 21, ¶25.]   The termination and non-renewal of Plaintiff's contract was an adverse employment action. *See, e.g., Meyers v. Starke,* 420 F.3d 738, 744 (8th Cir. 2005).

### (c)   Plaintiff's E-mail Was the Motivating Factor for the Termination of his Contract with the DNAALP.

As shown by the content and timing of the texts and e-mails from Fite to Defendants and other AOC administrative staff, [Exhs. 2-12], Plaintiff's e-mail to Fite, his own representative in the Arkansas House of Representatives, was the reason his contract was terminated. *McDonnell Douglas*, 411 U.S. at 802-03.

Because the evidence demonstrates that Plaintiff suffered an adverse employment action due to protected speech, he has made a prima facie showing that his constitutional rights have been violated. Therefore, a presumption of retaliation arises, and the burden of production shifts to Defendants to advance a legitimate reason for the employment action. *See Ryther v. KARE 11,* 108 F.3d 832, 836 (8th Cir.1997). Defendants cannot satisfy their burden.

Internal communications at the AOC reveal that, absent a legitimate reason, they will attempt to manufacture a reason in an effort to excuse their violation of plaintiff's rights, *e.g.,* Plaintiff's use of the AOC website in the signature block of the e-mail he sent to Fite. [Ex. 14.] This excuse is, however, insufficient to rebut the presumption that Plaintiff's e-mail was a motivating factor in the retaliatory action against him. *Hughes v. Stottlemyre,* 506 F.3d 675 (8th Cir. 2007); *Greer v. City of Warren, 1:10-CV-01065,* 2012 WL 1014658 (W.D. Ark. Mar. 23, 2012).

### (d)   Plaintiff's E-mail Caused No Disruption.

This Court's inquiry into whether Plaintiff has shown a probability of success on the merits should end with Defendants' failure to show a legitimate reason for Plaintiff's termination. Yet another reason the Court need not inquire further and need not apply the *Pickering-Connick* balancing test is that Defendants cannot show any disruption caused by Plaintiff's e-mail. The *Pickering-Connick* test only comes into play if there is evidence of disruption or, at a bare minimum,

the reasonable possibility of disruption. *Gordon v. City of Kansas City, Mo.*, 241 F.3d 997, 1003 (8th Cir. 2001); *Mattingly v. Milligan,* No. 4:11CV00215 JLH, 2011 WL 5184283, *4 (E.D. Ark. Nov. 1, 2011).

Even if this Court applied the *Pickering-Connick* balancing test, however, Defendants cannot show any disruption or even the reasonable possibility of disruption in office efficiency, the performance of Plaintiff's contractual duties, the destruction of working relationships, or the efficient fulfillment of AOC's ALLNP program's responsibilities to the public. *See id; accord Perry*, 408 U.S. at 597-98. Plaintiff's e-mail was private and went only to Fite. [Ex. 2.]  Fite, however, forwarded it to Defendant Sullivan and Janet Bledsoe approximately two hours later. [Exhs. 3, 5, 6, 9.] About two hours later, Sullivan was contemplating contract termination and spreading word of the e-mail to Defendant McDonald, Director of Human Resources Sam Kauffman, Jennifer Cruan, Kristin J. Clark, and Brooke Steen. [Exh. 6.] Plaintiff did not speak to anyone about it. Not even 48 hours later, Plaintiff's contract was terminated.  [Ex. 4.]  During that less than 48-hour period, there was no disruption the efficiency of AOC's operation, no creation of workplace disharmony, no impaired working relationships, or any alternation in Plaintiff's ability to provide his contracted professional services. *Henry*, 950 F.3d at 1101.  As a result, even if the *Pickering-Connick* balancing test applied, Defendants cannot show any disruption or even the reasonable possibility of

disruption in office efficiency, the performance of Plaintiff's contractual duties, the destruction of working relationships, or the efficient fulfillment of AOC's ALLNP program's responsibilities to the public in the approximate 48 hours between Plaintiff's sending his critical e-mail to Fite and his subsequent termination.

### 2. *Plaintiff will suffer irreparable harm absent entry of a preliminary injunction.*

It is well-settled law that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality).  If Plaintiff can establish a sufficient likelihood of success on the merits of his First Amendment claims, he will also have established irreparable harm. *Phelps-Roper v. Nixon,* 545 F.3d 685, 689-90 (8th Cir. 2008) (internal quotations omitted), *overruled on other grounds* by *Phelps-Roper v. City of Manchester,* 697 F. 2d. 678 (8th Cir. 2012); see *also Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir.1996); *Kirkeby v. Furness,* 52 F.3d 772, 775 (8th Cir. 1995).  Plaintiff will suffer irreparable harm if the preliminary injunction is not granted because the adverse employment action infringed his First Amendment rights.  *Nixon*, 509 F.3d at 488. No legal remedy exists which could compensate for the loss of protected constitutional rights.  *Nat'l People's Action v. Village of Wilmette,* 914 F.2d 1008, 1013 (7th Cir. 1990).

### 3. *Balancing the Equities favors a preliminary injunction.*

The balance of equities generally favors constitutionally-protected freedom

of expression. *Nixon,* 645 F.3d at 691. The balance of equities here decidedly favors the Plaintiff. *Nixon,* 509 F.3d at 488. If a preliminary injunction is not granted, Plaintiff will effectively be punished for exercising his First Amendment rights to engage in core political speech. On the other hand, Defendants will suffer no harm if the preliminary injunction is granted.

### 4. *Issuance of this injunction is in the public interest.*

Granting this motion for a preliminary injunction serves the public interest. The public interest is clearly served by upholding the U.S. Constitution and preventing the enforcement of unconstitutional laws. *Nixon,* 509 F.3d 488 (8th Cir. 2007). It is always in the public interest to protect constitutional rights. *Id; see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quotations omitted); *Kirkeby*, 52 F.3d at 775 (citing *Frisby v. Schultz*, 487 U.S. 474, 479 (1988)). As a result, the protection of plaintiff's constitutional rights favors the public interest.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff submits he has satisfied all the requirements to be awarded a preliminary injunction and requests that the Court grant his motion for a preliminary injunction and enjoin Defendant from terminating and not renewing his contract for 2021-2022 during the pendency of this litigation, and for all other relief sought in his motion.

Respectfully Submitted,

Dated: June 2ND, 2021.

Bettina E. Brownstein Bar 85019
Bettina E. Brownstein Law Firm
904 West 2nd Street, Suite 2
Little Rock, Arkansas 72201
(501)920-1764
bettinabrownstein@gmail.com


-and-


By _____

Johnathan D. Horton Bar 2002055
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808 FAX: (501) 376-9442
jhorton@wlj.com


*Attorneys for Plaintiff, Casey D. Copeland
on behalf of the Arkansas Civil Liberties
Union Foundation, Inc.*